UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LISA P.,<br><br>    Plaintiff,<br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 3:19-cv-05147-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of Defendant's denial of her application for disability insurance benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred, and the ALJ's decision is reversed and remanded for further administrative proceedings.

I. ISSUES FOR REVEW

1. Did the ALJ err in evaluating the medical opinion evidence?
2. Did the ALJ properly assess the impact of Plaintiff's migraine-related pain on her residual functional capacity ('RFC")?
3. Did the ALJ properly evaluate lay witness testimony?
4. Did the ALJ err in finding that there were a significant number of jobs Plaintiff could perform at step five of the sequential evaluation?

II. BACKGROUND

On January 20, 2015, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of November 13, 2013. AR 96, 383-86. Plaintiff amended

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

her disability onset date to November 14, 2013. AR 96, 128. Plaintiff's application was denied upon initial administrative review and on reconsideration. AR 96, 238-44, 246-54. A hearing was held before Administrative Law Judge ("ALJ") David Johnson on March 31, 2017. AR 122-53. ALJ Johnson held a supplementary hearing on September 28, 2017. AR 154-88. On December 28, 2018, the Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR 4-9.

On March 1, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 4. Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for additional proceedings. Dkt. 15, p. 18.

### III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

### IV. DISCUSSION

In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: headaches; degenerative disc disease; cervical strain; major depressive disorder; generalized anxiety disorder; avoidant personality disorder; hypothyroidism; and asthma. AR 98. The ALJ found that Plaintiff also had the non-severe impairments of tinnitus and gastrointestinal ulcers. AR 99.

Based on the limitations stemming from these impairments, the ALJ assessed Plaintiff as being able to perform a reduced range of light work. AR 101. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform her past work. AR 108, 164-65. The ALJ found that Plaintiff had acquired skills from her past work, including performing administrative tasks and clerical procedures; knowledge of office procedures; and dealing with office equipment. AR 108, 167-69. At step five of the sequential evaluation, the ALJ determined that there were other light, unskilled and semi-skilled jobs Plaintiff could perform; therefore, the ALJ determined at step five that Plaintiff was not disabled. AR 108-10, 165-69.

### A. Whether the ALJ erred in evaluating the medical opinion evidence

Plaintiff contends that the ALJ erred in evaluating the opinions of Plaintiff's treating physician Steven Stringfellow, M.D., Dkt. 15, pp. 5-11.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Stringfellow, Plaintiff's treating physician, provided two assessments of Plaintiff's functional capacity in 2015. On March 16, 2015, Dr. Stringfellow opined that

Plaintiff had been disabled since February 11, 2014 due to chronic pain stemming from her migraine headaches. AR 1312-13, 1452. Dr. Stringfellow stated that Plaintiff had been compliant with her medication regime, but never achieved sustained relief of her symptoms, and that Plaintiff's cognitive impairment could be related to her migraines and the side effects of her medication. *Id.* Dr. Stringfellow also stated that Plaintiff had severe depression and anxiety, which improved with Effexor. *Id.* Dr. Stringfellow added that Plaintiff was able to manage her depression and anxiety successfully until she was in a car accident in 2013, after which she developed chronic pain due to her migraines and was no longer able to work. *Id.*

On November 10, 2015, Dr. Stringfellow completed a physical capacity evaluation. AR 1113-16, 1438-41. Dr. Stringfellow opined that Plaintiff would be able to sit for 2 hours in an 8-hour day, stand and/or walk less than 1 hour, and occasionally lift up to 20 pounds. AR 1113, 1438. Dr. Stringfellow also stated that Plaintiff had a range of moderate and marked mental limitations. AR 1114-16, 1439-41.

The ALJ assigned "limited weight" to Dr. Stringfellow's assessments, reasoning that: (1) his opinions were inconsistent with his own treatment notes; (2) Dr. Stringfellow's March 2015 statement that Plaintiff's mental impairments improved with medication is inconsistent with his subsequent assessment of marked mental limitations; (3) Dr. Stringfellow's opinion concerning Plaintiff's mental limitations were inconsistent with the evidence as well as the opinion of examining psychologist Loren McCollom, Ph.D.; and 4) Dr. Stringfellow's opinion that Plaintiff's migraines were disabling was "categorical rather than functional." AR 107.

With respect to the ALJ's first two reasons for discounting Dr. Stringfellow's opinions, an inconsistency with the objective evidence can serve as a specific, legitimate reason for discounting a medical opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Here, the ALJ reasoned that Dr. Stringfellow's opinion was inconsistent with his own treatment notes, which indicated that Plaintiff's pain was manageable and her physical and mental impairments were well-controlled with prescribed medication and medical marijuana. AR 107, 675-77, 1038-1122, 1200-01, 1288, 1389.

The ALJ further reasoned that Dr. Stringfellow's March 2015 statement that Plaintiff's depression and anxiety had improved with Effexor was inconsistent with his November 2015 conclusion that Plaintiff had a range of marked mental limitations, especially since there was no evidence of a worsening in Plaintiff's mental health symptoms that would account for these limitations. AR 107, 1114-16, 1312-13, 1439-41, 1452. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.")

The ALJ has accurately characterized the medical record, and in citing the inconsistencies between Dr. Stringfellow's opinion concerning Plaintiff's physical and mental limitations and his own treatment notes, as well as the lack of support for Dr.

Stringfellow's November 2015 opinion, the ALJ has provided specific and legitimate reasons for discounting Dr. Stringfellow's opinion.

In citing the inconsistency of Dr. Stringfellow's opinion concerning Plaintiff's mental impairments with the medical record and the opinion of examining psychologist Dr. McCollom, the ALJ has provided additional specific and legitimate reasons for discounting his opinion. A physician does not have to be a specialist in mental health to provide a medical opinion regarding mental health limitations, although the medical opinion of a specialist about medical issues related to his or her area of specialty will generally be given more weight. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(5) (The Social Security Administration generally gives more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.)

Here, the ALJ's decision included a detailed discussion of the medical record and concluded that Plaintiff's mental health symptoms were generally stable and improved with prescribed treatment. AR 104-05. The RFC addressed Plaintiff's mental health impairments by restricting her to no more than occasional interaction with the general public; no more than frequent interaction with co-workers or supervisors; and to work that does not require more than occasional changes in the work setting. AR 101, 106.

Dr. McCollom, who examined Plaintiff in April 2015, opined that Plaintiff's adaptive capabilities were compromised, that her physical pain would likely impact her productivity, and stated that she was not capable of independently managing her finances. AR 1009. However, Dr. McCollom also stated that Plaintiff was able to sustain

attention and concentration and interact in a socially appropriate manner. *Id.* The ALJ reasoned that Dr. McCollom was a mental health specialist who conducted psychological testing and whose opinion was more consistent with the medical record. AR 106-07. The ALJ did not commit error by citing Dr. McCollom's specialization and the inconsistency of Dr. Stringfellow's opinion with the record, thereby assigning less weight to Dr. Stringfellow's opinion.

Because the ALJ has provided several specific, legitimate reasons for discounting the limitations assessed by Dr. Stringfellow, the ALJ did not err in evaluating this opinion. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

B.  <u>Whether the ALJ erred in evaluating Plaintiff's pain allegations</u>

Plaintiff contends the ALJ erred by not considering the impact of the pain caused by her migraine headaches when assessing her residual functional capacity. Dkt. 15, pp. 11-13.

In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's

testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id; see Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

In evaluating the impact of Plaintiff's migraines on her ability to work, the ALJ reasoned: (1) recent treatment notes did not document headache complaints during clinical visits; and (2) Plaintiff's headaches were stable and well controlled with prescription medication. AR 103-04.

Inconsistency with objective evidence may serve as a clear and convincing reason for discounting Plaintiff's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ's conclusion that Plaintiff did not complain of recent headache related symptoms is not supported by the record, which indicates that while Plaintiff did not complain of migraines at every visit, she stated that her migraines were exacerbated by her mental health conditions, interfered with her concentration and cognition, and had increased in frequency and severity, with only a partial response to medication. AR 1301, 1310, 1322, 1333, 1390, 1401.

With respect to the ALJ's second reason, evidence of conservative treatment successfully relieving symptoms can serve as a clear and convincing reason for discounting a Plaintiff's testimony. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

The evidence cited by the ALJ does not support the ALJ's conclusion that medication successfully alleviated Plaintiff's migraines. AR 103, citing AR 1190-1201, 1322-1335. The evidence indicates that while Plaintiff's migraines were sometimes classified as "stable" and "well controlled" by her physician, Plaintiff complained of ongoing, frequent migraines which interfered with her concentration and cognition, and asked her physician about resuming treatment with Nortriptyline. AR 1201, 1322, 1331-32. Accordingly, the ALJ has not provided clear and convincing reasons for discounting Plaintiff's testimony concerning her migraine headaches, and the ALJ erred by not addressing migraine symptoms in the RFC.

C. <u>Whether the ALJ properly evaluated lay witness testimony</u>

Plaintiff contends that the ALJ erred in evaluating a lay witness statement from Plaintiff's husband. Dkt. 15, pp. 13-14.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236

F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512.

In discounting lay witness testimony from Plaintiff's husband, the ALJ reasoned that his statement concerning Plaintiff's activities of daily living was: (1) inconsistent with the medical record; (2) inconsistent with Plaintiff's medical improvement; (3) inconsistent with Plaintiff's demonstrated level of functioning during examinations; and (4) Plaintiff's activities in the home setting may reflect "self-limiting behaviors" that do not reflect her actual functional ability. AR 107.

An inconsistency between the medical evidence and the opinion of a non-acceptable medical source can constitute a germane reason for discounting that opinion. *See e.g. Bayliss v. Barnhart*, 427 F.3d, 1211, 1217 (9th Cir. 2005), *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (conflict between lay witness testimony and the medical evidence is a germane reason for rejecting such testimony). In citing the inconsistency of lay witness testimony with the medical record, Plaintiff's medical improvement, and examination results, the ALJ has provided germane reasons for discounting the statement from Plaintiff's husband.

### D. Whether the ALJ erred at step five of the sequential evaluation

Plaintiff contends that the ALJ did not resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony. Dkt. 15, pp. 15-16. Specifically, Plaintiff argues that there is inconsistency between the VE's testimony that Plaintiff could perform a significant number of jobs at step five, and the

1  DOT, which indicates that Plaintiff would be unable to perform these jobs given a
2  limitation to occasional overhead reaching. *Id.*

3  When the ALJ determines that there is an apparent unresolved conflict between
4  vocational evidence and the DOT, the ALJ must elicit a reasonable explanation for the
5  conflict before relying on the VE evidence to support a determination or decision about
6  whether the claimant is disabled. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir.
7  2007) (citing Social Security Ruling ("SSR") 00-4p).

8  Plaintiff argues that there is a conflict between the VE's testimony that Plaintiff
9  could perform the jobs of general clerk, production assembler, office helper, and
10 garment folder given a restriction to no more than occasional overhead reaching, and
11 the DOT, which provides that all four jobs require either frequent or constant reaching.
12 Dkt. 15, pp. 15-16; *see* DOT 239.567-010, 1991 WL 672232; DOT 209.562-010, 1991
13 WL 671792; DOT 789.687-066, 1991 WL 681266; DOT 706.687-010, 1991 WL 679074;
14 *see also* U.S. Dep't of Labor, Selected Characteristics of Occupations ("SCO") Defined
15 in the Revised Dictionary of Occupational Titles, Part A (1993) at 281, 315, 348;
16 Appendix C.

17 Social Security regulations define "reaching" as extending the hands and arms in
18 any direction. *See* SSR 85-15; *see also* SCO, Appendix C-3. As such, there is an
19 apparent conflict between the DOT and the VE's testimony, since a restriction to only
20 occasional overhead reaching could prevent Plaintiff from performing any of the jobs
21 cited by the VE at step five.

22 Here, the ALJ asked the vocational expert whether his testimony concerning the
23 number of jobs available at step five deviated from the DOT. AR 170-71. The VE

testified that to the extent it did, his opinion concerning whether Plaintiff could perform these jobs was based on his knowledge of the labor market and his experience working with employers. *Id.*

In *Guiterrez v. Colvin*, the Ninth Circuit held that the appropriate analysis when confronted with an apparent conflict between the DOT, which provides that the jobs cited by the VE at step five require frequent reaching, and the VE's testimony that Plaintiff could perform these jobs despite a restriction involving overhead reaching, is to ask "whether *overhead* reaching is such a common and obvious part" of the jobs cited by the VE that the ALJ should have recognized a conflict and questioned the expert more closely before concluding that Plaintiff could perform these jobs. 844 F.3d 804, 809 (9th Cir. 2016) (italics in original).

In *Guiterrez*, the Ninth Circuit held that there was no apparent or obvious conflict between the expert's testimony that Ms. Gutierrez could perform work as a cashier despite her weight bearing and overhead reaching limitations with her right arm. The Court in *Guiterrez* reasoned: While the DOT noted that even though the jobs of cashier and stock clerk both required "frequent" reaching, "anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Id.* at 808. The Ninth Circuit found that "where the frequency or necessity of a task is unlikely and unforeseeable—as it is with cashiers having to reach overhead" the ALJ has no obligation to ask more specific questions of the vocational expert. *Id.*

Two of the jobs cited by the VE – general clerk and office helper – are office-based jobs that do not obviously require more than occasional overhead reaching. *See*

DOT 209.562-010, 1991 WL 671792; DOT 239.567-010, 1991 WL 672232. The job of garment folder appears to involve significant exertion and reaching, but does not obviously require overhead reaching. DOT 789.687-066, 1991 WL 681266. The job of production assembler is an assembly line job that requires significant physical exertion and interaction with machinery; and so, no inference may reasonably be drawn about whether overhead reaching is, or is not, a "common and obvious part" of this job. DOT 706.687-010, 1991 WL 679074. Yet any error in the ALJ's assessment of this job would be harmless, as long as there would still be a significant number of jobs Plaintiff could perform at step five. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that harmless error principles apply in the Social Security context); *see infra* Section E.

E. Additional evidence

Evidence was submitted by Plaintiff after the ALJ issued his decision. AR 15-92. The Appeals Council denied review of Plaintiff's claim and opted not to designate this evidence as an exhibit, reasoning that the evidence did not establish a reasonable probability of changing the outcome of the ALJ's decision. AR 5.

This Court must consider this additional material in determining whether the ALJ's decision is supported by substantial evidence. *See Brewes v. Commissioner of Social Security*, 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence).

The evidence in question consists of a declaration from vocational rehabilitation counselor Joseph Moisan, Ed.D., a qualified vocational counselor who served as a vocational consultant for the Social Security Administration for nearly 30 years. AR 15-92.

The Supreme Court held that – even if there is no demand from the claimant for supporting data -- a vocational expert's testimony may constitute substantial evidence even when unaccompanied by such data; and, even if a VE refuses to furnish supporting data, if the ALJ finds the vocational testimony otherwise trustworthy, the "expert's opinion will qualify as 'more than a mere scintilla' of evidence supporting the ALJ's conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155-56, 58 (2019).

On January 31, 2017, Plaintiff's attorney requested that the ALJ issue a subpoena to compel the VE to bring to the hearing documents the VE relied upon in forming her opinion about the available number of jobs at step five of the sequential evaluation. AR 515-16. The ALJ denied this request, finding that it was overly broad and the information requested was available from other sources without a subpoena. AR 96. The ALJ also reasoned the VE was present and subject to cross-examination at the hearing, and there was no need to produce additional documentation. *Id.*

During the hearing, Plaintiff's attorney asked the vocational expert about the source she consulted when assessing the number of jobs Plaintiff could perform at step five. AR 177. The VE replied that her job numbers came from the U.S. Bureau of Labor and Statistics. *Id.* Plaintiff's attorney then noted that the Bureau of Labor Statistics does not provide job numbers for discreet DOT job codes and that the Bureau instead provides job numbers utilizing Standard Occupational Classification ("SOC") group

codes. AR 177-78. *See e.g. Haile v. Commissioner of Social Security Administration*, 2016 WL 614428 at *8, n.3 (D. Or. February 14, 2016 [noting that the 2010 SOC system, in use when the hearing was held, contained 840 detailed occupations, aggregated into 461 broad occupations, and that in turn, the SOC combined these 461 broad occupations into 97 minor groups and 23 major groups]).

Plaintiff's attorney questioned the VE as to how many light jobs were available in the SOC groups containing the jobs cited by the VE at step five. AR 178-80. The VE described how many job titles were in each SOC group, but was unable to say how many light, unskilled jobs were available in each category. *Id.* When asked by Plaintiff's attorney how long it would take to obtain the number of jobs of a similar skill and exertional level in each SOC group, the VE said that she would require several hours to acquire this information. AR 180; *see also Sanchez v. Berryhill*, 2018 WL 6219872 at *1 (C.D. Cal., November 8, 2018) (noting that SOC groupings differentiate only based on skill—not exertion—level.) (internal citation omitted).

Plaintiff's attorney requested an extension of one week so the VE could obtain this information and provide it to the agency. AR 180. The ALJ denied this request. AR AR181-82. When asked by the ALJ, the VE testified that all the jobs she cited at step five were adjusted to provide job numbers for light, unskilled jobs. AR 184. Plaintiff's attorney then asked the VE:

> Q: Just to make sure I clearly understand. You've identified a variety of SOC groups with varying numbers of DOT Titles within each group. Is it your testimony that the job numbers that you have provided for the specific DOT Titles that you have described are for the numbers of jobs within a specific SOC group that is consistent with the, the skill level and the exertional level of the particular DOT jobs you have named?
>
> A: Yes, sir.

AR 186.

While a vocational expert's testimony will typically be inherently reliable, an ALJ's discretion in relying upon this testimony in reaching a decision as to disability is not absolute. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155, 65 (2019) (noting that in some cases a refusal to disclose jobs data, *along with other shortcomings*, can undercut a vocational expert's testimony and prevent the ALJ's decision from being supported by substantial evidence); *see also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (noting that "*in the absence of any contrary evidence*," a vocational expert's testimony is regarded as inherently reliable; *Wright v. Berryhill*, 692 F. App'x 496, 497 (9th Cir. 2017) (unpublished) ("*Absent a persuasive challenge* to the ALJ's reliance on the VE's proffered job numbers, [claimant] cannot establish that the ALJ's acceptance of the VE's testimony constituted reversible error.") (emphasis added).

Dr. Moisan's declaration states that the number of jobs identified by the VE was not accurate, and the VE's testimony that she based her findings on her training and experience was not supported by objective data -- and was "nothing more than a guess." AR 17-18. Dr. Moisan stated that he conducted his own research using Job Browser Pro, "because it is the only program that provides job number data for individual DOT codes" rather than groups of jobs. AR 18. Dr. Moisan states many jobs listed in the DOT have become obsolete or absorbed into other jobs since the DOT was last updated in 1991, and that the DOT descriptions for three of the jobs cited by the VE have not been updated since the 1970s or 80s. AR 18-19.

Relying on data from Job Browser Pro, Dr. Moisan stated that the number of production assembler, office helper, and garment folder jobs available at step five is

much less than the number testified to by the VE, and that all the jobs cited by the VE are contained in SOC groups that contain as many as 1,500 separate occupations. AR 17-19. Dr. Moisan stated that based on his research, in the United States there are 681 production assembler jobs, 3,622 office helper jobs, and 57 garment folder jobs. AR 18. *See Gutierrez v. Comm. of Soc. Sec.,* 740 F.3d 519, 529 (9th Cir. 2014) (finding that 25,000 jobs available in the national economy represented a "close call" regarding what constituted a "significant number" of jobs).

In this case, Plaintiff was not given notice of the documents that the VE relied on in reaching her conclusions, and has presented to the Appeals Council compelling, contrary evidence that challenges the data underlying the vocational expert's testimony. On remand, the ALJ shall consider this evidence at the hearing, shall provide a copy of Dr. Moisan's declaration to the vocational expert prior to the hearing, and shall permit Plaintiff's attorney to question the vocational expert concerning its contents.

### F. Remand with Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 17

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the ALJ must re-evaluate the impact of Plaintiff's migraine-related pain on her residual functional capacity and the impact of Dr. Moisan's declaration on Plaintiff's ability to perform other work at step five. Therefore, there are outstanding issues which must be resolved and remand for further administrative proceedings is the appropriate remedy.

## CONCLUSION

The Court finds the ALJ erred when he determined Plaintiff to be not disabled. Defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to re-evaluate the impact of Plaintiff's migraine-related pain on her residual functional capacity and the impact of Dr. Moisan's declaration on Plaintiff's ability to perform other work at step five.

Dated this 24th day of March, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge